**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| PENNMARK FROSTBURG HOLDINGS, LLC,<br>*Plaintiff*,<br>v.<br>UNITED CALL CENTER SOLUTIONS, LLC, *et al.*,<br>*Defendants*. | Case No. 25-cv-4186-ABA |

## MEMORANDUM OPINION

Plaintiff Pennmark Frostburg Holdings, LLC ("Pennmark") owns Unit 115 of the Frostburg Plaza Shopping Center in Frostburg, Maryland, and sues three defendants for a breach of a 2006 commercial lease (the "Lease"). Defendants United Call Center Solutions, LLC ("United") and Integrated Call Center Solutions, LLC ("Integrated"), the current tenant and its guarantor respectively, have answered. Defendant Conduent Commercial Solutions, LLC ("Conduent"), the successor to the original tenant, has moved to dismiss the only count against it, Count III. ECF No. 8. Because Pennmark released Conduent from the Lease in 2018 when Pennmark expressly approved the assignment of the Lease from Conduent to United, six years prior to the alleged breaches, Conduent's motion to dismiss Count III will be granted.

## I. BACKGROUND[1]

On April 12, 2006, Frostburg Properties, LLC entered into the Lease with ACS Commercial Solutions, Inc. for an initial term ending March 31, 2009. ECF No. 2

[1] Because the case is at the pleading stage, the Court assumes the truth of Plaintiff's allegations. *See Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 154—55 (4th Cir. 2021).

("Compl.") ¶ 11.[2] Section 7 of the Lease, captioned "Assignment and Subletting," contains the provisions at issue. Section 7(a) prohibits the tenant from assigning the Lease or any interest therein "without the prior written consent of Landlord," requires a written request at least forty-five days before a proposed assignment, and lists eight conditions. ECF No. 2 at 18–19 (Compl. Ex. A).[3] Section 7(a) (the "Assignment" provision) concludes:

> Upon acceptance by the Landlord of an assignment, Tenant shall be relieved of any further obligation under the terms of this Lease.

*Id.* at 19. Section 7(b) governs subleasing and ends with a paragraph the parties refer to as the "Permitted Transfer" provision:

> Notwithstanding any other provisions contained herein, Tenant may assign its interest herein, or sublet all or any portion of the Premises, to any present or future parent, affiliate or subsidiary without Landlord's consent (herein, a "Permitted Transfer"), provided that Tenant shall remain primarily liable hereunder in the event of any such assignment or sublease.

*Id.*

In other words, the "Assignment" provision requires the landlord's prior written "acceptance" (among other requirements) but has the effect of relieving the tenant of

---

[2] For ease of reference, Plaintiff and Defendant Conduent's predecessors in interest will be referred to using the current existing entity. For Plaintiff, "Plaintiff" or "Pennmark" also refers to Frostburg Properties, LLC. For Defendant Conduent, Conduent also refers to ACS Commercial Solutions, Inc.

[3] Page number references correspond to ECF pagination, which may differ from the pagination used by the parties. The Lease is attached as Exhibit A to the complaint, and appears within ECF No. 2 at pages 13 through 43. Amendments and extensions of the original lease are attached as Exhibits B and C.

"any further obligation" under the Lease; the "Permitted Transfer" provision does not require prior written consent but does *not* relieve the transferring tenant of any obligations under the Lease.

On April 10, 2009, Frostburg Properties and ACS extended the term through March 31, 2019 ("Extension Term"). Compl. ¶ 20; ECF No. 2 at 45–52 (Compl. Ex. B). During the Extension Term, United acquired Conduent, Integrated acquired United, and United acquired the tenant's interest in the Lease. Compl. ¶ 21. Pennmark alleges that this assignment "was not approved by the original landlord or the Plaintiff, but was effectuated in connection with Conduent's acquisition by an affiliated entity, with Conduent remaining primarily liable as the original tenant." *Id.*

On November 29, 2018, Pennmark, which was acquiring Frostburg Properties' interest as landlord, and United executed a Lease Extension and Amendment Agreement (the "2018 Amendment"), *id.* ¶¶ 22–23, which extended the term through March 31, 2029. ECF No. 2 at 55 (Compl. Ex. C). Conduent was not a signatory to the 2018 Amendment. *Id.* at 54, 57. Section 9 of the 2018 Amendment provides that "[e]xcept as otherwise expressly provided in this Lease Extension, all of the terms and conditions of the Original Lease shall continue unchanged as previously in effect." *Id.* at 56. Section 10, captioned "Approval of Assignment," provides that "Effective as of the Effective Date, Landlord hereby approves, ratifies and consents to the Acquisition and the assignment of the Lease by Original Tenant to Tenant." *Id.* In the same transaction, Integrated executed a guaranty of United's obligations under the Lease. Compl. ¶ 25; ECF No. 2 at 61–64 (Compl. Ex. D).

Pennmark alleges that United made only partial payments through December 17, 2024, abandoned the premises in or around February 2024, and, with Integrated, has

paid nothing since. Compl. ¶¶ 26–29. Pennmark filed this action in the Circuit Court for Allegany County, and Conduent removed it on December 18, 2025. ECF No. 1. Count III alleges that Conduent remains primarily liable for United's breaches because the assignment to United was a Permitted Transfer. Compl. ¶¶ 49–53. Conduent moved to dismiss Count III, ECF No. 8; Pennmark opposed, ECF No. 12; and Conduent replied, ECF No. 13.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Contractual Obligation

Under Maryland law, a claim for breach of contract requires a "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 198 Md. App. 337, 344 (2011), *aff'd*, 426 Md. 185 (2012)). Conduent contends that the first element is missing: by the time of the breaches Pennmark alleges, Conduent owed Pennmark no obligation because Pennmark had accepted the assignment to United in 2018, which relieved Conduent of further obligation under Section 7(a) of the Lease. ECF No. 8-1 at 5–7. Pennmark responds that the assignment was a Permitted Transfer, that the Permitted Transfer provision keeps Conduent "primarily liable," and that the Lease is ambiguous. ECF No. 12 at 5–7. The Court agrees with Conduent.

Section 7(a) conditions the tenant's release on a single event: "acceptance by the Landlord of an assignment." ECF No. 2 at 19 (Compl. Ex. A). It does not condition release on how the assignment was created, on whether the tenant requested the Landlord's consent in advance, or on satisfaction of the 45-day notice and eight conditions that precede it in Section 7(a). Section 10 of the 2018 Amendment is that acceptance. Under the caption "Approval of Assignment," Pennmark "approves, ratifies and consents to the Acquisition *and the assignment of the Lease* by Original Tenant to Tenant." *Id.* at 56 (emphasis added). Pennmark is the Landlord; ACS, now Conduent, is the Original Tenant; and United is the Tenant. *Id.* at 54. And Section 9 confirms that

Section 7(a)'s release sentence remained in force: "all of the terms and conditions of the Original Lease shall continue unchanged as previously in effect." *Id.* at 56.

Pennmark relies on the Permitted Transfer provision. Because the assignment to United occurred in connection with an acquisition by an affiliated entity, Pennmark argues, it was a Permitted Transfer for which the Landlord's consent was unnecessary, and under which Conduent "shall remain primarily liable." ECF No. 12 at 5–6; Compl. ¶ 21. Section 10 of the 2018 Amendment, on this view, merely memorialized, "albeit superfluously," consent that was never required, and did not change the nature of the transfer. ECF No. 12 at 6.

The Court assumes, as it must at this stage, that the assignment was a Permitted Transfer and that Conduent remained primarily liable when the transfer occurred. But even so, Count III fails because the Permitted Transfer provision and the release sentence govern different events and can be given effect without conflict. The Permitted Transfer provision in 7(b) permits the tenant to assign to a "parent, affiliate or subsidiary without Landlord's consent," and it fixes the consequence of such a transfer: the tenant "shall remain primarily liable." ECF No. 2 at 19. It does not say that the Landlord may not later *accept* such an assignment, and it does not say that an assignment the Landlord accepts leaves the tenant liable. *Id.* The release sentence from 7(a), by contrast, addresses precisely that later event— "acceptance by the Landlord of an assignment"—and supplies its consequence: "Tenant shall be relieved of any further obligation." *Id.* Read together, the provisions operate in sequence. A Permitted Transfer

that the Landlord never accepts leaves the original tenant primarily liable. A Permitted Transfer that the Landlord subsequently accepts triggers the release.

Pennmark undisputedly accepted the assignment in 2018, a fact established on the face of the November 2018 Lease Extension and Amendment Agreement, which Pennmark attached to the complaint. ECF No. 2 at 56. Pennmark's complaint itself thus establishes that Conduent was therefore relieved of any further obligation under the Lease when the 2018 Amendment took effect on February 4, 2019. *Id.* at 54. The breaches Pennmark alleges began six years later in 2024. Compl. ¶¶ 26–29. Count III therefore fails to state a claim on which relief can be granted.

**B. Ambiguity**

Where a contract provision is subject to multiple interpretations, it is "ambiguous." *Calomiris v. Woods*, 353 Md. 425, 436 (1999) ("[A] written contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning."). And the construction of an ambiguous contract provision "is a factual determination that precludes dismissal on a motion for failure to state a claim." *Martin Marietta Corp. v. Int'l Telecomm'ns Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1993) (citing *Wolman v. Tose*, 467 F.2d 29, 34 (4th Cir. 1972)).

Pennmark contends that Section 10 is ambiguous because it does not say whether the assignment it approves is a consented assignment under the "Assignment" provision or a "Permitted Transfer," does not recite that Section 7(a)'s preconditions to a consented assignment were satisfied or waived, and does not state that Conduent is released from liability. ECF No. 12 at 5–6. Those omissions, Pennmark argues, preclude dismissal under *Martin Marietta* and *Hardwire LLC v. Goodyear Tire & Rubber Co.*, 360 F. Supp. 2d 728, 736 (D. Md. 2005). ECF No. 12 at 4–7. But it is not reasonable to

read Pennmark's statement that it "approves, ratifies, and consents to . . . the assignment," under Section 10's heading "Approval of Assignment," as anything other than an acceptance of that assignment. *See Calomiris*, 353 Md. at 436. Unlike the provisions at issue in *Martin Marietta* and *Hardwire*, Section 10 is not susceptible of the alternative reading that Pennmark proposes.[4]

## IV. CONCLUSION

Because Count III fails based on the terms of the agreements attached to the Complaint, rather than a factual pleading deficiency that could be cured by amendment, amendment would be futile. *See Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). For the reasons stated above, Conduent's motion to dismiss Count III, ECF No. 8, will be granted, and Count III will be dismissed with prejudice. A separate order follows.

Date: September 25, 2026

/s/
Adam B. Abelson
United States District Judge

[4] Because the absence of a contractual obligation disposes of Count III, the Court need not decide Conduent's alternative argument that Count III is barred by the statute of limitations, including whether the 2018 Amendment is a contract under seal subject to the 12-year period of Md. Code Ann., Cts. & Jud. Proc. § 5-102. *See* ECF No. 8-1 at 7–8. The Court likewise need not decide Conduent's argument, raised for the first time in reply, that Conduent cannot be liable under a lease term to which it never agreed. ECF No. 13 at 11.